Tucker, Judge.
Hugh West, in the year 1767, made his will as follows, “I desire that all my just debts be paid ; and, in order to enable my executors to do so, I hereby order that they, my said executors, or the survivor or survivors of them, or a majority of them then living, (if they shall think fit,) do sell and dispose of my whole estate real and persona], my dwelling plantation and adjacent lands excepted, to any person they think proper; and that they pass any deeds or writings to convey the absolute property to the purchaser.” Then having devised the lands whereon he lived, one moiety to the child of which he supposed his wife to be pregnant, if a son, and the other moiety equally to be divided among his daughters; but if the child should prove to be a daughter, the whole between them as co-heirs, in fee simple, he proceeds thus: “ Item, my will is, that if my executors shall not find it necessary to sell and dispose of my lands, already mentioned to be sold, that then the said land be equally divided among all my children, born or unborn, to them and their heirs forever.” And appointed his wife, Elizabeth, and his brothers John, George and William, his executors; all of whom qualified as such.
November 1, 1768, George West, one of the executors, without the assent or concurrence of the other executors, or any of them, as far as appears by the record, sold a tract of land in Frederick county to Humphrey Wells ; and gave his bond, with condition to be void, if he should, within a reasonable time, make a good, effectual conveyance of the land, in law and equity, to the said Wells, he. agreeable to the last will and testament of his testator. In this bond he styles himself one of the executors of Hugh West. This bond was assigned to Sniclcers, with a direction to make the conveyance to him: and, having passed through several hands, was, at last, assigned in like manner to Morgan.
*417 Hugh West left three daughters, (but no son,) all infants, - and now married to the other appellants. In the year 1797, they brought an ejectment for the land sold by George West (who never executed any conveyance for it) in Winchester district court, and obtained a verdict and judgment for the same against Morgan, the tenant in possession. Morgan hereupon filed a bill in the high court of chancery, against the appellants, praying an injunction; which was granted; afterwards perpetuated; and a conveyance of the land decreed to be made by the appellants to the plaintiffs in the suit in chancery. From which decree the defendants in equity have appealed to this court.
I shall pass over the two first points made by the appellants’ counsel in this case; and proceed to consider the third, namely, That a majority of the executors did not, at any time, consent to, or concur in, the sale; and that a majority only could sell.
In the case of personal estate, a sale by one executor alone is sufficient, without the concurrence, or assent, of the rest. For each executor has the entire control of the personal estate of his testator, and may release, or pay a debt, or transfer any part of the testator’s property, without the concurrence of the other executors. 2 Ves. 267, 268. But it has been decided in this court, that a purchaser of lands from an executor, is bound to look for, and to understand the extent of that power, and, consequently, the principle, caveat emptor, strictly applies in such a case. Brock & al. v. Philips, 2 Wash. 70. For, if a man purchases under a will by which a trust is created, he must, at his peril, take notice of the operation of the law upon it. 2 Fonbl. Eq. 152. Which brings us to consider what the law, in such cases, was at the time of the testator’s decease.
By the common law, if one executor refused to sell, the others could not. Co. Litt. 113, a. “ But,” says lord Coke, “ now by the statute 20 Hen. 8, (which being a statute of a general nature, was certainly in force in Virginia, at the time of the testator’s death, Ord. Convention, May 1776, ch. 5,) *418 it is provided, that where lands are willed to be sold by executors, though part of them refuse, yet the residue may sell.” These, however, are not the words of the statute; nor is the passage to be understood as authorizing the construction, that, if a part of those who qualify refuse to sell, the others may sell; but that if part of those named as executors in the will, refuse the executorship, those who accept the office may sell. Which is evidently the true meaning of the statute, as will appear upon examination. The case, then, as between those who do qualify, seems to be left as at common law : and this will reconcile what is there said by' lord Coke, with what he says in page 181, b.; that if a man devise that his two executors shall sell the land, if one of them die, the survivor shall not sell it. Now, the reason is much stronger why one executor should not sell in the lifetime of the other, without his concurrence. For one might covenant with A., and the other with B., for the lands; and, if they need not join in the conveyance, two opposite titles might be created at the same instant, by different conveyances to different persons, neither of which could claim a preference over the other, the separate conveyance of each executor being equally available to pass the lands; an absurdity which it is presumed has no foundation, or countenance, in the law. Again, in Co. Litt. 236, a., it is said, that where a man deviseth that his executor shall sell the land, there the land shall descend, in the mean time, to the heir; and, until the sale be made, the heir may enter and take the .profits. And, probably upon this ground, it seems to have been agreed in this court, that, if the heir be one of the executors, his conveyance, without the concurrence of any of the rest, would operate as an estoppel against him as heir, Shaw v. Clements, 1 Call, 438; but the converse of the case, that the sale had been made by another executor, without the consent of the heir, if there were but two, or of a majority, if there were, more, would not hold good. For the heir had a present interest, which he might well part with by the conveyance, as well as a power, in common *419 with the other executors, under the will. Whereas the executors, where lands are devised to be sold by them, have a bare power, and not a profit, Co. Litt. 236, a.; for no interest passes by such a devise, according to the opinion of chief justice Roll. Ibid. Harg. note 1. If a sale of lands by one executor, where there are more, be valid; as, suppose the testator makes his heir, his widow and a stranger his executors, with power to sell his lands, if necessary for the payment of his debts, (as in this case,) and the stranger were to sell without the consent either of the heir, or the widow, although no necessity existed for doing'so; in this case the heir might be disinherited, and the widow deforced of her dower, by the act of the stranger having no interest in the lands, and whose power under the will was only equal with the power of the heir and the widow respectively ; which is an inconvenience which the law will no more tolerate, than the absurdity of different conveyances, by different executors, to different persons. I hold it, therefore, to be incontrovertible, that where there are more executors than one, who qualify under the will, either the whole, or at least a majority of them, must join in the sale of lands devised to be sold. Row. Dev. 292, 300.
But, if this were not the case, generally, yet it seems to have been expressly the intention of the testator in this case, that a majority at least of his executors should concur in the sale of his lands; for words cannot make his intention clearer than he has expressed it in his will: and, evidently, it was his intention, that they should be governed herein by the necessity of doing so, for the payment of his debts; of which not one only, but all were to judge.
Upon these grounds, I am of opinion, that the sale of the lands in question, if made by George West alone, without the concurrence, assent, or approbation of a majority of the executors of Hugh West, then living, or a majority of the survivors of them, was void, both at law and in equity. Such concurrence, assent, or approbation, may, however, in my opinion, be either express, implied, antecedent, contempo *420 rary or future. For any subsequent act, by any other of the executors, which might be interpreted into a ratification or confirmation of the sale made by George West, would, in my opinion, be equally available, as if his consent had been formally given before the sale; or as if he had joined, at the time, in making the sale. As if it had appeared, that either of them did actually receive the purchase money, or bring a suit upon the bonds given by Wells and Snickers for the recovery of it. These acts would, in my opinion, be equally as available, as if they had joined George West in the bond for making a conveyance. But such concurrence, or approbation ought not to be inferred' from doubtful circumstances, not manifesting a deliberate intention to confirm, or ratify, his act.
Having minutely examined the evidence with a view to this point, I find nothing but slight presumptions, inferrable from trivial and equivocal circumstances, only, in favour of the assent, either of John or William West, to the act of George: which presumptions are strongly rebutted, not only by other circumstances of equal, or greater weight, but by the positive disapprobation of both those executors, proved to have been expressed, at different times, in the most unequivocal manner. And of the assent of the widow, the fourth executor, there is not even the most distant ground of presumption.
But length of time, and the variety of hands through which these lands may have passed, may be considered as creating an equity in favour of the appellees. ■
The appellants being infants of very tender years, when the sale was made; and the ignorance under which William West is proved to have remained as to the transaction, until the death of George in the year 1786; and the want of the title papers; which it is in proof the appellants were not possessed of until many years after; in my opinion, are circumstances amply sufficient to rebut all equity against them, arising merely from length of time. And it being in proof, and so alledged, if I mistake not, in the bill, that *421 Morgan took an assignment of George West’s bond to Humphrey Wells to make him a title, in which he styles himself one of the executors, not sole executor, of Hugh West, this circumstance alone was sufficient notice to him, to put him upon further enquiry as to the power that George West alone had to sell the lands; it being a general rule, that whatever is sufficient to put a party upon an enquiry is good notice in equity. 2 Fonbl. Eq. 151, note. 1 Atk. 490. Ambl. 13. 2 Ves. 440. And this being the case, he comes within the rule laid down in this court in the case of Brock v. Philips, that a purchaser of lands from an executor is bound to look for, and to understand, the extent of that power; and consequently that the principle, caveat emptor, strictly applies to the testator of the appellees in this case.
It being in proof, however, that George West received £ 84 of Snickers, that sum ought to be refunded to his executors ; but I think without interest; for it was little more than half the price agreed on for the lands, and not a twentieth part of their present value. The rents and profits, therefore, may be set against the interest; and the appellants enjoined from bringing any suit for mesne profits, under the circumstances of this case. And as the appellants are legatees and devisees under the will of George West, they ought to give security to pay their proportion of any damages which may be recovered upon his bond to Wells, for making a title, as far as their share of George West’s estate will extend. I am therefore of opinion, that the decree be reversed, and a decree made upon the foregoing principles.
Roane, Judge.
I am also of opinion, that there is not sufficient evidence of assent or ratification on the part of the executors of H. West (other than George West), or a majority of them. The circumstances relied on by the chancellor are too slight to justify such a conclusion, and may be otherwise satisfied and accounted for. I differ from that judge, therefore, in the presumption which he has deduced *422 therefrom. It would be too much, on such slight and equivocal circumstances, to say the least, to ratify an act done by one man, when the power is only confided to several. As to the lapse of time in this case, it ought to be no bar: The infancy of the appellants, and other circumstances, which have been particularly stated by the judge who preceded me, accounting for, and excusing the same. I am therefore of opinion, that the decree should be reversed, and the injunction dissolved.
Fleming, Judge.
The will required, that there should be a necessity for the sale, and that a majority of the executors should concur in it: neither of which was attended to; for it does not appear that the sale was necessary; or that it was made, or assented to, by more than one of the executors; and that one a dissipated, and imprudent man. Consequently, as the directions of the will have not been pursued, the sale is void. The length of time is no objection to the appellants; who are excused by infancy and ignorance of their rights; which were not discovered until the year 1795. But it is an objection to the appellees; who lay by without taking any steps towards perfecting their title, until the other executors, who might have combatted their pretensions, were all dead; and now affect to rely upon the alledged antiquity of the transaction to support them. I think, therefore, that the decree ought to be reversed, and the injunction dissolved.
Carrington, Judge.
The personal estate appears to have been abundantly sufficient to pay the debts; and therefore the sale was plainly unnecessary: Which, of itself, renders the appellees’ claim to relief in some degree exceptionable. But, passing over that, the will expressly required that a majority of the executors should concur in the sale : Whereas the proof is, that it was made by one of them only, without the concurrence or assent of the rest. The authority, therefore, was not pursued; and consequently *423 the sale is void. The decree ought, therefore, to be re- ° versed, and the injunction dissolved. The appellants, ever, should restore the £ 84 which were paid; but without interest.
Lyons, President.
This is not a bill for a specific performance by the purchaser of the land; but for relief, by the heirs, against a pretended fraud, notwithstanding long submission to the sale, to the prejudice of subsequent purchasers, who had a right to presume title in their own immediate vendors, from the long acquiescence in those interested to controvert it. Although the sale, upon the face of the contract, appears to have been made by one of the executors only, there seems to be great reason to think it was concurred in by the others: and in an earlier contest, it might perhaps have been completely proved. I think the negligence of the appellants culpable, and see but little to blame in the purchaser and his assignees, who were left in undisturbed possession of the land until 1797, and were not bound to see to the application of the purchase money, as the power was to sell for payment of debts generally, without any schedule, or other specific direction. Nothing, therefore, can be objected to them, but their failure to obtain a conveyance. A majority of the court, however, is of a different opinion, and the following is to be the decree:
" The court is of opinion, That the sale of the lands of Hugh West, the testator, made by George West, one of the executors only, does not satisfactorily appear to have been made with the concurrence, assent or approbation of a majority of the executors of the said Hugh West, all of whom qualified as such; or with the concurrence, assent or approbation of a majority of the survivors of the said executors, without which such sale ought not to be enforced even in a court of equity, more especially since it doth not appear that there was actually a deficiency of personal assets of the testator, or that the sale was openly and publicly-made to the highest bidder, as charged in the complainant’s *424 bill, or that the purchase money was actually paid to the executors, or either of them, in a reasonable time, or that the whole thereof hath been at any time paid : Circumstances, which, if they had appeared in this case, might have afforded a much stronger presumption, that such assent or approbation, though not proved, was actually given, than the presumption arising from length of possession before the writ of ejectment was brought by the appellants, which is rebutted by other circumstances affording a reasonable excuse for the delay in bringing that suit: Therefore it is decreed and ordered, that the injunction, obtained by the said Daniel Morgan in the said court of chancery, be dissolved; and that the appellee deliver to the appellants the possession which he holds under the said Daniel Morgan, of the premises recovered against him and others'by the judgment in the said writ of ejectment. And it appearing to this court that the sum of eighty-four pounds only, including Hector Ross’s note for thirty pounds discounted by George West, was paid by Edward Snickers, the testator of the defendant William Snickers, and that the rents, issues and profits of the land whereof the said Edward obtained the possession, have been probably much more than adequate to the lawful interest on that sum, It is further decreed and ordered, that the appellants pay to William Snickers, the executor of the said Edward Snickers, the aforesaid sum of eighty-four pounds without interest, within three months after this decree shall have been entered in the said court of chancery; and further, that they give bond with security to satisfy and pay their proportionable parts of any damages which may be recovered against the estate of George West, upon his bond to Humphrey Wells for making a good title to the said lands, so far as their distributive share of the real and personal estate of the said George West will extend, and that they be forever restrained from bringing any suit at law against the appellee as executor of the said Daniel Morgan, deceased, for the mesne profits of the lands by them recovered in ejectment: that the bill be dismissed *425 as to all the defendants not noticed in this decree, and that each party bear their own costs in the said court of chancery. But nothing in this decree contained shall be construed to bar the representatives of Hugh West and Edward Snickers respectively from any remedy which they may think proper to pursue for the settlement of the accounts of their respective testators with each other.”